UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| ALMA HORNE | CIVIL ACTION NO.: |
| VERSUS | |
| J.C. PENNEY CORPORATION, INC., LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, AND J.C. PENNEY CORPORATION, INC. VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION LIFE AND DISABILITY BENEFITS PLAN | JUDGE: |
| | MAGISTRATE JUDGE: |

## **COMPLAINT**

NOW INTO COURT, through undersigned counsel, comes Plaintiff, Alma Horne, who respectfully represents as follows:

### **Introduction**

1.

Plaintiff, Alma Horne, asserts claims for damages and/or penalties owed to her for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq.

2.

Ms. Horne seeks amounts due to her under the J.C. Penney Corporation, Inc. Voluntary Employees' Beneficiary Association Life and Disability Benefits Plan ("Plan"), a declaration of her entitlement to disability insurance benefits, an award in the amount of all past due benefits, injunctive relief ordering the payment of future benefits for as long as she remains disabled, an

equitable surcharge on such benefits for the losses sustained by her because the benefits were withheld, penalties for the failure and/or refusal to produce documents requested, attorney's fees, and legal interest on all amounts due until paid.

3.

Ms. Horne asserts her claims against the Plan. In addition, she asserts claims against J.C. Penney Corporation, Inc., the Plan Sponsor and fiduciary of the Plan, and Liberty Life Assurance Company of Boston, the insurance company that acted as a *de facto* Plan fiduciary and claims administrator for the long-term disability policy issued under the Plan.

4.

Defendants, or one or more of them, terminated Ms. Horne's long-term disability benefits, in direct contravention of the terms of the Plan and in violation of the fiduciary duties imposed upon them by ERISA, claiming that she was no longer disabled, despite the lack of any evidence of any improvement in her condition from the time that she was deemed disabled and began receiving long-term disability benefits, and despite any real evidence that she was not "disabled" as defined by the Plan's long term disability insurance policy.

**Parties**

5.

Plaintiff, Alma Horne, is a person of the full age of majority, domiciled in Monroe, Ouachita Parish, Louisiana.

6.

Defendants are:

a) J.C. Penney Corporation, Inc. Voluntary Employees' Beneficiary Association Life and Disability Benefits Plan ("Plan"), an employee benefit plan subject to ERISA, EIN: 13-5583779, Plan # 501. The Plan may be served through its Sponsor, J. C. Penney Corporation, Inc., through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400 B, Baton Rouge, LA 70808;

b) Liberty Life Assurance Company of Boston ("Liberty"), a foreign insurance company doing business in the State of Louisiana. Liberty may be served through its registered agent for service of process, the Louisiana Secretary of State, 8585 Archives Avenue, Baton Rouge, LA 70809; and

c) J.C. Penney Corporation, Inc. ("J.C. Penney"), a foreign corporation doing business in the State of Louisiana. J.C. Penney may be served through its registered agent for service of process, CT Corporation System, 5615 Corporate Blvd., Ste. 400 B, Baton Rouge, LA 70808.

**Jurisdiction and Venue**

7.

Ms. Horne's claims arise under federal law, particularly ERISA, 29 U.S.C. § 1001, et seq. Thus, this Court has jurisdiction over this proceeding pursuant to 29 U.S.C. § 1132(e) and (t), 29 U.S.C. § 1132(a)(I)(A) and (B), 28 U.S.C. § 1132(a)(2) and (3), 29 U.S.C. § 1331(a) and 28 U.S.C. § 2201.

8.

Venue is proper herein, pursuant to 29 U.S.C. §1132(e)(2) as the Defendants failed and/or refused to pay long term disability benefits to Plaintiff, Alma Horne, in Monroe, Louisiana, in violation of 29 U.S.C. § 1001, et seq. Venue is also proper herein, pursuant to 29 U.S.C. §1132(e)(2) as Defendant, Liberty, failed and/or refused to produce copies of the documents relevant to Ms. Horne's claim to her in Monroe, Louisiana upon her request, as required by 28 U.S.C. §1132(c)(1). Additionally, venue is proper herein as all Defendants regularly do business in and can be found within the Monroe Division of the Western District of Louisiana.

**Factual Background**

9.

At all times relevant hereto, Plaintiff, Alma Horne, was employed by Defendant, J.C. Penney, as a Sales Representative at its Monroe, Louisiana store from approximately June 1984 until April 2010.

10.

In April 2010, Ms. Horne became totally disabled and unable to work due to a number of serious health conditions.

11.

At the time that Ms. Horne became totally disabled in April 2010, she suffered from hypertension, cardiac dysfunction, cardiomyopathy, lumbar disc disease, cervical disc disease, asthma, congestive heart failure, coronary artery disease, chronic chest pain, chronic abdominal pain, diverticulosis and diverticulitis, Type II diabetes, chronic fatigue syndrome with malaise,

shortness of breath, and arm swelling with arm use limitations. These conditions made it impossible for her to work.

12.

Due to the aforementioned health conditions, Ms. Horne's treating physician, Dr. Claude Minor, determined that she was totally disabled, that she should not work in any capacity and that further work would only lead to an exacerbation of her symptoms.

13.

Ms. Horne's employer, J.C. Penney, maintained and, upon information and belief, continues to maintain, a health and welfare benefit Plan providing long-term disability benefits pursuant to ERISA, 29 U.S.C. 1001, et seq.

14

As an employee of J.C. Penney, Ms. Horne was entitled to participate in the Plan, which was sponsored by J.C. Penney, and actually became a participant in the Plan and is entitled to benefits thereunder.

15.

Upon information and belief, a Group Disability Income Policy ("Policy") was issued and underwritten by Defendant, Liberty, in conjunction with the Plan.

16.

Upon information and belief, the Plan purchased the Policy from Liberty to fulfill its obligation to pay indemnity benefits to eligible employees who became totally disabled. Ms. Horne was provided coverage under the Plan and the Policy and is entitled to benefits based on her disability.

17.

Upon information and belief, Liberty assumed the *de facto* administration of Ms. Horne's claim in 2010 and acted as claims administrator under the Policy.

18.

Ms. Horne was a participant in the employer-sponsored Plan and thus, applied for Long Term Disability Benefits ("Benefits") through the Plan's Policy. She began receiving Benefits under the Plan from Liberty on or about October 13, 2010.

19.

At all times relevant hereto, Defendant, Liberty, as the *de facto* administrator for the Plan of Defendant, J.C. Penney, was responsible for the oversight, administration, approval and/or denial, and payment of Benefits to Ms. Horne under the Plan.

20.

The Policy obligates Liberty to pay Benefits to covered employees, such as Ms. Horne, who are totally disabled.

21.

On October 10, 2012, Liberty sent correspondence to Ms. Horne wherein it acknowledged that Ms. Horne had been paid Benefits under the Plan due to her inability to perform the duties of her occupation as a Sales Representative.

22.

In the October 10, 2012 correspondence, Liberty advised that the definition of "disability" changed in the Policy to require a showing of "the employee's inability to perform the duties of his own or any occupation for which he has training, education or experience."

23.

Liberty further advised that it would make a determination of Ms. Horne's Benefits eligibility based on updated medical records that it had requested from Ms. Horne's healthcare providers.

24.

On January 18, 2013, Liberty sent correspondence to Ms. Horne, wherein it advised that no further Benefits would be paid because Ms. Horne allegedly did not "meet the definition of disability from Any Occupation," as defined by the Policy.

25.

Despite Ms. Horne's serious medical conditions that rendered her totally disabled and unable to work in the opinion of her treating physician, Dr. Minor, Liberty ignored Ms. Horne's restrictions and claimed that Ms. Horne had the ability to perform work as an "Information Clerk" or "Security Guard," jobs for which she had no knowledge or training and which had physical requirements that Ms. Horne clearly could not meet (sitting for long periods, standing for long periods, walking for long periods, chasing and apprehending wrongdoers).

26.

Liberty's determination that Ms. Horne did not "meet the definition of disability from Any Occupation," was allegedly based upon the biased recommendations of a physician, who never rendered any treatment to Ms. Horne, and an unidentified "vocational specialist," who also never met with Ms. Horne.

27.

Liberty advised Ms. Horne of her right to review the denial of Benefits under ERISA by requesting a review within 180 days of January 18, 2013 and of her right to provide additional medical information for review.

28.

Accordingly, on June 17, 2013, Ms. Horne requested, via correspondence from counsel, a review of Liberty's denial of Benefits. She also included April 16, 2013 correspondence from Ms. Horne's regular treating physician, Dr. Minor, which confirmed that Ms. Horne was totally disabled and that any form of employment would only serve to exacerbate her serious medical conditions.

29.

On June 18, 2013, Liberty sent correspondence to Ms. Horne acknowledging its receipt of her request for a review of the denial of Benefits.

30.

On July 26, 2013, Liberty sent correspondence to Ms. Horne, wherein it acknowledged receipt of but ignored the conclusion of Dr. Minor regarding Ms. Horne's inability to work, concluded that Ms. Horne did not meet the definition of "disabled," and denied further payment of Benefits.

31.

Additionally, Liberty reviewed but ignored the Social Security Administration's determination that Ms. Horne was totally disabled and entitled to receive Social Security Disability Income benefits.

32.

On July 26, 2013, Liberty also notified Ms. Horne that she could "request to receive, free of charge, copies of all documents relevant to [her] claim."

33.

Since Dr. Minor's April 16, 2013 correspondence indicating that Ms. Horne could not work in light of her medical conditions and finding that she was totally disabled, no treating physician of Ms. Horne has opined that she is capable of gainful employment in any capacity. Liberty was aware of this but still denied Benefits to Ms. Horne.

34.

On August 1, 2013, Ms. Horne faxed correspondence through counsel requesting "copies of all documents relevant to Ms. Horne's claim as referenced in your letter."

35.

Liberty failed and/or refused to provide any documents requested by Ms. Horne, including the administrative claims file, the Plan document, the Policy, reports from its hired medical, nursing and vocational file reviewers, and any other documents relevant to Ms. Horne's claim.

36.

From January 18, 2013 through the present date, Ms. Horne's employer and the Plan sponsor, Defendant, J.C. Penney, failed to ensure that Benefits owed to Ms. Horne pursuant to its Plan were paid to her by Liberty.

### The Claim

### FIRST CAUSE OF ACTION

### [Claim for recovery of Plan benefits pursuant to 29 U.S.C. §1132 (a)(1)(B), interest, attorney's fees and for recognition of right to future disability benefits]

37.

Ms. Horne incorporates and reiterates the allegations contained in Paragraphs 1 through 36, as if copied herein, *in extenso*.

38.

An actual controversy exists between Ms. Horne, Liberty and J.C. Penney arising out of the events alleged hereinabove. Specifically, Defendants, or any of them, have no legal basis for terminating Ms. Horne's Benefits.

39.

By signing the written contract of disability insurance, Defendants, or any of them, agreed to provide Ms. Horne with certain disability insurance Benefits in accordance with the terms and conditions set forth in the Plan and Policy.

40.

To date, Defendants, or any of them, have failed and/or refused to pay Ms. Horne the Benefits to which she is rightfully entitled from January 18, 2013 to the present.

41.

Ms. Horne has satisfied all conditions under the Plan and Policy and thus, she is eligible to receive Benefits.

42.

The denial of Benefits to Ms. Horne was contrary to and in breach of the terms of the Plan and Policy and in contravention of the duties imposed upon Defendants by ERISA.

43.

Ms. Horne seeks a judicial declaration that she is disabled within the meaning of the Policy, declaring her to be entitled to Benefits from January 18, 2013 and for as long as her disability prevents her from engaging in any gainful employment.  Ms. Horne further seeks reimbursement and compensation for any and all Benefits that she would have received from January 18, 2013 and continuing into the future for as long as she continues to fulfill the requirements under the Plan and Policy.

44.

As a direct and proximate result of the aforementioned conduct of Defendants, or any of them, in failing to pay Ms. Horne Benefits, she has been damaged in an amount equal to the amount of Benefits to which she is entitled under the terms of the Plan and Policy plus interest, for a total amount to be determined at the time of trial.

45.

Defendants, or any of them, unreasonably and wrongfully denied Ms. Horne Benefits based on unfair claims procedures to support their conclusions that she was not, in fact, totally disabled, in violation of ERISA.

46.

The denial of the Benefits was a breach of the Plan and Policy, in complete disregard of the medical evidence in the claim file and unsupported by substantial, reliable evidence.  Thus, the denial of benefits was arbitrary and capricious.

47.

To the extent that Liberty is the insurer of the long-term disability benefits provided under the Plan and/or *de facto* administrator of the Plan, it is conflicted as it both administers the Plan and the Policy and pays Benefits. Due to such conflict, Liberty is not entitled to any deference in the review of its claim decision, and its actions should be reviewed *de novo*.

48.

Upon information and belief, Liberty's inherent financial conflict of interest affected its decision to discontinue payment of Benefits to Ms. Horne.

49.

Although Ms. Horne contests that Liberty was lawfully granted the requisite discretion to administer the claim, if this Honorable Court determines that this claim should be reviewed pursuant to the abuse of discretion standard, Liberty's unlawful actions were a product of its own self-interest and constitute an abuse of discretion.

50.

The unlawful behavior of Liberty is evidenced by the following:

a) Failing to authorize Benefits to Ms. Horne at a time when it knew that she was entitled to said Benefits under the terms of the Plan and Policy, in bad faith and contrary to the Plan and Policy;

b) Unreasonably withholding Benefits from Ms. Horne knowing her claim for Benefits was valid;

c) Unreasonably failing to pay Benefits without having any valid, objective and unbiased evidence supporting its decision to deny Benefits;

d) Completely disregarding the most recent recommendation of Plaintiff's treating physician, Dr. Claude Minor, regarding Ms. Horne's inability to work in any occupation due to her medical conditions;

e) Selectively emphasizing certain evidence in order to cast a favorable light on its position, while ignoring and/or downplaying the restrictions and limitations placed on Ms. Horne by her treating physicians;

f) Improperly retaining and relying upon medical and vocational reviewers, who are biased in favor of Liberty, to obtain opinions that support its denial of Benefits;

g) Completely disregarding Ms. Horne's own assessment of her medical conditions and how they restrict and limit her from engaging in any occupation;

h) Consistently acting in Liberty's own personal interests instead of those of the Plan and its participants;

i) Notifying Ms. Horne of the existence of a specific opinion of a medical file reviewer at the same time that it notified her that her appeal was denied and that the record was closed, thus denying her the right to comment on the evidence, in violation and contravention of her statutorily guaranteed right to a full and fair hearing;

j) Failing to conduct an actual vocational assessment of Ms. Horne prior to denying her Benefits; and

k) Improperly denying Ms. Horne Benefits without any information that her condition had improved from the time that Liberty initially approved her claim

51.

The unlawful behavior of J.C. Penney is evidenced by the following:

a) Failing to ensure that Plan and Policy participants, including Ms. Horne, receive the Benefits and protections required to be afforded to them under the Plan and Policy provisions;

b) Failing to ensure that its *de facto* administrator, Liberty, administers the Plan and Policy in a manner that is not in violation of the requirements of ERISA and failing in its fiduciary duty to properly appoint Liberty and to monitor Liberty's actions;

c) Upon information and belief, acquiescing in and condoning the denial of Benefits to Ms. Horne by Liberty, in violation of the Plan and ERISA, to Ms. Horne's detriment and to its benefit.

52.

As a direct and proximate result of the conduct alleged herein by Defendants, Liberty and J.C. Penney, Ms. Horne has been damaged in an amount equal to the amount of Benefits she would have received from the Plan had Liberty paid her Benefits from January 18, 2013.

53.

Ms. Horne has been forced to bring the instant action as a result of Defendants' unlawful denial and violations of the Plan, the Policy and ERISA. Ms. Horne has fully exhausted her administrative remedies under the Plan and/or the Policy, to no avail, and the actions of Defendants have deprived her of a full and fair consideration of her claim for Benefits.

54.

As a result of Defendants' actions, Ms. Horne has incurred and is entitled to recover costs and attorney's fees in the prosecution of this action, as well as prejudgment interest, pursuant to 29 U.S.C. § 1132(g).

55.

Ms. Horne is also entitled to an order from this Court directed to Defendants, commanding them to continue the payment of Benefits to her for so long as her disability continues.

56.

Ms. Horne is also entitled to engage in discovery directed to the conflict of interest and the extent to which it influenced the Benefits denial by Liberty and to obtain the documents related to Ms. Horne's claim, which Liberty failed to produce upon request, in bad faith and in violation of 29 U.S.C. 1132(c), as a means to hinder Ms. Horne's pursuit of her claims herein.

## SECOND CAUSE OF ACTION

### [Breach of fiduciary duty]

57.

Ms. Horne incorporates by reference and reiterates the allegations contained in Paragraphs 1 through 56 as if copied herein, *in extenso*.

58.

Defendant, Liberty, was required pursuant to Part 4 of Title I of ERISA, 29 U.S.C. § 1101, et seq., to discharge its duties with respect to Benefits claims prudently, for the exclusive benefit of Plan participants, and in accordance with the specific fiduciary obligations imposed therein.

59.

Liberty acted as a *de facto* administrator and fiduciary, and is therefore liable for any breach of the Plan's fiduciary duty to Ms. Horne.

60.

In its decision to terminate Ms. Horne's benefits, Liberty acted arbitrarily and capriciously, in willful disregard of its obligations pursuant to ERISA, the terms of the Plan and the Policy, as

well as the medical evidence submitted.  Liberty acted only its own financial interest in denying Ms. Horne's claim.  Accordingly, Liberty has breached its fiduciary obligations under ERISA, the Plan and the Policy.

61.

Upon information and belief, Liberty has engaged in a pattern and practice of systematic efforts to delay and deny claims for disability benefits by unfair and arbitrary review tactics and procedures for its own financial gain.  Liberty must therefore be enjoined from continuing said unlawful and arbitrary practices.

62.

Upon information and belief, J.C. Penney, as the Plan sponsor, appointed Liberty, as the *de facto* administrator of claims under the Plan and Policy.  J.C. Penney's appointment of Liberty and its failure to monitor Liberty's actions with respect to Ms. Horne's claim were breaches of J.C. Penney's fiduciary obligations under ERISA, the Plan and the Policy, as it knew Liberty to be an entity with a financial interest in Ms. Horne's claim for Benefits.

63.

Ms. Horne is entitled to an equitable surcharge against Liberty and J.C. Penney for their aforementioned breaches of their fiduciary duties.

### THIRD CAUSE OF ACTION

**[Claim for penalties for refusal to supply information
that Liberty is required to supply in response to
Ms. Horne's request pursuant to 29 U.S.C. § 1132(c)]**

64.

Ms. Horne incorporates and reiterates the allegations contained in Paragraphs 1 through 63, as if copied herein *in extenso*.

65.

On July 26, 2013, Liberty offered to produce upon request, "copies of all documents relevant to [Ms. Horne's] claim," as required by 29 U.S.C. § 1132(c).

66.

Accordingly, on August 1, 2013, Ms. Horne, via correspondence from counsel, advised Liberty that "I am in receipt of your July 26, 2013 letter regarding Ms. Horne's claim for long term disability benefits. Please provide me with copies of all documents relevant to Ms. Horne's claim as referenced in your letter."

67.

The request for documentation was received Defendant, Liberty, but it has never provided any document "relevant to [Ms. Horne's] claim," including but not limited to its administrative/claims file or any other documents in the possession of Liberty which relate in any way to its Benefits denial determination, including the Plan document, the Policy, and any and all reports from its hired medical, nursing and vocational file reviewers.

68.

Liberty refuses to provide the requested documents as a means to interfere with Ms. Horne's pursuit of her claims herein.

69.

Pursuant to 29 U.S.C. § 1132(c), Ms. Horne is entitled to recover from J.C. Penney and/or Liberty $100.00 per day, per document, beginning 30 days from August 1, 2013, when Ms. Horne's written request for "all documents relevant to [her] claim," was received by Liberty, until such time as J.C. Penney and/or Liberty produces "all documents relevant to [her] claim," including but not limited to the complete administrative/claims file relating to Plaintiff and any

and all other documents in the possession of J.C. Penney and/or Liberty, which relate in any way to the Plan, the Policy as in effect from 2010 to the present, and Liberty's Benefits denial determination.

WHEREFORE, Plaintiff, Alma Horne, prays that Defendants, J.C. Penney Corporation, Inc. Voluntary Employees' Beneficiary Association Life and Disability Benefits Plan, Liberty Life Assurance Company of Boston and J.C. Penney Corporation, Inc., be served with a copy of the above and foregoing Complaint, that they be cited to appear and answer same, and that after all legal delays and due proceedings are had, there be judgment in favor of Plaintiff, Alma Horne, and against Defendants, J.C. Penney Corporation, Inc. Voluntary Employees' Beneficiary Association Life and Disability Benefits Plan, Liberty Life Assurance Company of Boston and J.C. Penney Corporation, Inc.  Plaintiff, Alma Horne, further prays:

   a. For a judicial declaration that she is disabled within the meaning of the Policy and declaring her to be entitled to continued disability insurance benefits from January 18, 2013 for as long as her disability prevents her from engaging in any gainful employment;

   b. For an Order directing Defendants, J.C. Penney Corporation, Inc. Voluntary Employees' Beneficiary Association Life and Disability Benefits Plan, Liberty Life Assurance Company of Boston and J.C. Penney Corporation, Inc., to reinstate Alma Horne's Benefits with interest on each past due payment until paid;

   c. For an Order declaring that Plaintiff is to continue to receive Benefits from the Policy and/or the Plan, in the future for as long as she continues to qualify for Benefits pursuant to the terms of the Plan and Policy;

   d. For an award of reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g), and for costs incurred in this action;

e.	For an award of an equitable surcharge in a reasonable amount;

f.	For an award of penalties in the amount of $100 per document, per day, for each day that Defendants, J.C. Penney Corporation, Inc. and/or Liberty Life Assurance Company of Boston, fail and/or refuse to comply with Alma Horne's request that they supply the documents that they are required to supply pursuant to 29 U.S.C. § 1132(c), until such time as they fully comply with Ms. Horne's request, beginning 30 days from August 1, 2013; and

g.	For an Order allowing discovery and ordering the parties to confer to draft a discovery plan.

    Respectfully submitted:

    BREITHUAPT, DUNN, DUBOS,
    SHAFTO & WOLLESON, LLC
    1811 Tower Drive, Suite D
    Monroe, LA 71201
    Telephone:	(318) 322-1202
    Facsimile:	(318)322-1984
    E-mail:	lwalters@bddswlaw.com

By:	/s/ K. Lamar Walters, III
    Michael L. DuBos, T.A. (23944)
    K. Lamar Walters, III (31353)

    Attorneys for Plaintiff, Alma Horne